## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARK FIDANZA, for himself and )
on behalf of all others similarly )
situated, )
                              )    CIVIL NO.:_____
     Plaintiffs, )
                              )    CLASS ACTION
     v. )
                              )    **JURY TRIAL DEMANDED**
THE REPUBLICAN COMMITTEE )
OF CHESTER COUNTY, )
                              )    *ELECTRONICALLY FILED*
     Defendant. )

## CLASS ACTION COMPLAINT

Plaintiff Mark Fidanza, for himself and on behalf of all others similarly situated, by and through his attorneys, brings this civil class action for damages and equitable relief against the above-named Defendant, the Republican Committee of Chester County, demands a trial by jury, and complains and alleges as follows:

## INTRODUCTION

1.     Plaintiff brings this action individually and on behalf of all others similarly situated, seeking damages and any other available legal or equitable remedies resulting from the illegal actions of Defendant, in negligently, knowingly, and/or willfully sending unsolicited, autodialed text messages to cellular

telephones in violation of the Telephone Consumer Protection Act, thereby invading the privacy of Plaintiff and the putative class members.

## NATURE OF THE CASE

2.      In 1991, faced with a national outcry over the volume of robocalls being received by Americans, Congress passed the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq. ("TCPA"), to address certain abusive telecommunications practices.

3.      The TCPA prohibits, *inter alia*, making any telephone call to a cellular telephone using a "prerecorded or artificial voice" or an "automatic telephone dialing system" ("ATDS" or "autodialer") absent an emergency purpose or the "express consent" of the party called.

4.      According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, autodialed calls and text messages are prohibited because receiving them is a greater nuisance and more invasive than receiving live or manually dialed telephone solicitations. The FCC also recognized that wireless customers are charged for such incoming calls and texts whether they pay in advance or after the minutes are used. Moreover, because cellular telephones are carried on their owners' persons, unsolicited calls and texts transmitted to such devices via an autodialer are distracting and aggravating to their recipients and intrude upon their

recipients' seclusion.

5.      In 2015, the FCC noted, "[m]onth after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 1 (2015).

6.      The FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2344 n.1 (2020) ("The robocall restriction, as implemented by the Federal Communications Commission, bars both automated voice calls and automated text messages." (citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14115 (2003))).

7.      Notably, under FCC guidance, robotexts sent by political organizations using an autodialer ("Political Robotexts") violate the TCPA when sent without the recipient's prior consent.  *See* https://www.fcc.gov/rules-political-campaign-calls-and-texts.

8.      Unlike more conventional advertisements, text message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they

receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

9.    The transmission of an unsolicited text messages to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

## JURISDICTION AND VENUE

10.    This Honorable Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim arising under a federal statute, namely the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*.

11.    Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because Defendant is a resident of this Judicial District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this Judicial District.

## THE PARTIES

12.    Plaintiff Mark Fidanza ("Plaintiff") is an individual and a "person" as defined by 47 U.S.C. § 153(39) who is, and at all relevant times mentioned herein was, a citizen of Pennsylvania residing in Montgomery County, Pennsylvania.

13.    Defendant, the Republican Committee of Chester County ("RCCC"), is, upon information and belief, an unincorporated political association created

pursuant to the Pennsylvania Election Code, as the county-wide committee of the Pennsylvania Republican Party within Chester County, Pennsylvania. *See* 25 P.S. § 2837.  RCCC is a "person" as defined by 47 U.S.C. § 153(39) and is headquartered at 15 S. Church Street, West Chester, PA 19382.  RCCC maintains a website at https://www.republicanccc.com/.

## STATEMENT OF FACTS

14.    Plaintiff was at all times mentioned herein the subscriber of the cellular telephone number (9\*\*) \*\*\*-3722 ("Plaintiff's Cell Number"), which is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

15.    Plaintiff has never lived or worked in Chester County, Pennsylvania, and is not a member of any political party or organization.

16.    Plaintiff is not now, and never has been, registered to vote in Chester County.  Plaintiff is registered to vote in Montgomery County, Pennsylvania, where he resides.

17.    Plaintiff has no prior contact or dealings with RCCC and has never provided any personal information to RCCC or otherwise authorized RCCC to contact Plaintiff.

18.    RCCC is the county arm of the Republican Party in Pennsylvania ("PAGOP"), which in turn is the state arm of the Republican National Committee

("RNC", and together with RCCC and PAGOP, the "GOP").

19.    During the four years prior to the filing of the complaint, RCCC by itself or through an intermediary or intermediaries, sent multiple text messages to Plaintiff's Cell Number and multiple text messages (that were identical to or substantially the same as those received by Plaintiff) to each member of the putative Class.

20.    All of the subject text messages received by Plaintiff and the members of the putative Class were transmitted by or on behalf of RCCC without the requisite prior "express consent" of Plaintiff or any member of the putative Class.

21.    By way of example, on October 19, 2022, during the lead up to the November 8, 2022, general election, RCCC contacted Plaintiff by way of text message solicitation sent to Plaintiff's Cell Number 17 times between 9:58am and 3:08pm.  Each of those text messages originated from the same number, (651) 661-3374.   A true and correct copy of screen shot photos of Plaintiff's cellular telephone showing these text message solicitations from the RCCC is attached hereto as Exhibit A.

22.    As shown in Exhibit A and excerpted below, the RCCC's unsolicited text messages each contained one of two different messages:



23.    Both pro forma text messages contained an option for Plaintiff to opt-out of the barrage of text messages by either texting a response of "STOP" or "STOP2end" to the sender.  *See* Exhibit A.

24.    After being hounded by 10 separate unsolicited text messages in less than an hour (between 9:58am and 10:48am), Plaintiff opted-out of any further communications by sending a reply text message saying "STOP" at 10:50am.  *See id.*

25.    Notwithstanding Plaintiff's express opt-out using the very method

offered by RCCC in the unsolicited text messages, RCCC then disregarded its own opt-out procedures and sent another two (2) unsolicited text messages to Plaintiff at 10:53am. *Id.* If that wasn't enough, RCCC then continued to send another four (4) text messages to Plaintiff. *Id.*

26.     At 12:34pm, frustrated by the bombardment of distracting text message solicitations, Plaintiff sent two more reply text messages to opt-out, employing both phrases offered by RCCC ("STOP" and "STOP2end"), both at 12:34pm. *Id.* Even that was not enough, as RCCC then proceeded to send yet another unsolicited text message at 3:08pm. *Id.*

27.     Then, on October 27, 2022, RCCC commenced its campaign of harassment-by-text message once again. This time, it sent another 10 separate text messages to Plaintiff, each of which originated from the number (484) 749-0711, between 12:36pm and 1:17pm. A true and correct copy of screen shot photos of Plaintiff's cellular telephone showing these text message solicitations from the RCCC is attached hereto as Exhibit B.

28.     As shown in Exhibit B, and excerpted below, each of RCCC's 10 unsolicited text messages sent to Plaintiff contained identical language:



29. Although the language employed by RCCC in its October 27, 2022 text messages did not provide an express opt-out procedure, Plaintiff nevertheless sent the message "STOP" at 12:51pm in an effort to stop the harrassment. *See id.* Six (6) more text messages were sent by RCCC thereafter. *Id.*

30. Because Plaintiff's cellular phone alerts him whenever he receives a text message, each of the 27 unsolicited text messages described above, transmitted by or on behalf of RCCC to Plaintiff's Cell Number was a nuisance to Plaintiff, distracted Plaintiff, and invaded Plaintiff's privacy and intruded upon his seclusion upon receipt.

31.    On October 28, 2022, Plaintiff sent a Cease and Desist letter to RCCC.  In response, RCCC's Solicitor, Warren Kampf, Esq., called Plaintiff and apologized for RCCC's misconduct.  Mr. Kampf also stated that RCCC received several other complaints regarding its text messaging solicitations, and that there was a problem with the "system" used to send the messages.

32.    Upon information and belief, all telephone contact by RCCC or affiliates, subsidiaries, or agents of RCCC to Plaintiff's Cell Number and to the numbers belonging to the unnamed Class members occurred using an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A).  Plaintiff's belief in this regard is specifically based upon, among other things: Plaintiffs' lack of any prior relationship and/or interactions with RCCC; Plaintiff never having authorized RCCC to contact him; Plaintiff having no ties to Chester County or any political party therein, and Plaintiff never having been registered to vote in Chester County; the fact that the improper text messages were not individualized, but instead each contained one of three generic, pro forma messages that was sent repeatedly to Plaintiff; the fact that several of the text messages included specific opt-out directions which is typical of an automated dialer's text messaging program; the fact that several of the text messages were sent in such quick succession and contained such similar content that it was improbable for them to have originated by a human dialing/texting the message; Mr. Kampf's disclosure

that RCCC received other similar complaints and his confirmation of the existence of a "system" being used by RCCC to cause text messages to be sent.

33.    Therefore, upon information and belief, the dialing equipment utilized by or on behalf of RCCC to send the improper text messages includes features substantially similar to a predictive dialer, inasmuch as it is capable of making or initiating numerous calls or texts simultaneously (all without human intervention), and because the hardware and software used by or on behalf of RCCC to make or initiate such messages have the capacity to store, produce, and dial random or sequential numbers, and to receive and store lists of telephone numbers, and to then dial such numbers, *en masse*, in an automated fashion without human intervention.

34.    In fact, RCCC actually transmitted, or caused to be transmitted, the text messages at issue in this case to Plaintiff and all other putative Class members in an automated fashion and without human intervention, with hardware and software that had the capacity to store, produce, and dial random or sequential numbers and that received and stored telephone numbers and then dialed such numbers automatically.

35.    Neither Plaintiff nor any other member of the putative Class provided their prior "express consent" to RCCC or any affiliate, subsidiary, or agent of RCCC to transmit the subject text messages to the Plaintiff's Cell Number or to

any other Class member's cellular telephone number by means of an "automatic telephone dialing system" within the meaning of 47 U.S.C. § 227(b)(1)(A). Indeed, Plaintiff is not (and never was) a customer, member, affiliate, or participant in RCCC's services and/or programs and has never provided any personal information, including Plaintiff's Cell Number, to RCCC for any purpose whatsoever.

36.    None of RCCC's text messages to the Plaintiff's Cell Number or to any putative Class member's cellular telephone number was sent for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A).

37.    Through RCCC's aforementioned misconduct, Plaintiff and the members of the putative Class suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.   Indeed, Plaintiff was personally affected by RCCC's aforementioned misconduct because Plaintiff was frustrated that RCCC annoyed and distracted Plaintiff with an unsolicited text message campaign undertaken without Plaintiff's prior express consent, and that RCCC continued to do so even after Plaintiff took the additional step of repeatedly expressly opting-out of the further text messages, thereby resulting in a colossal waste of Plaintiff's time, energy, and attention.

## CLASS ALLEGATIONS

38.    <u>Class Definition.</u> Plaintiff brings this civil class action on behalf of

himself individually and on behalf of all other similarly situated persons (the "Class") as a class action pursuant to Federal Rule of Civil Procedure 23. The Class which Plaintiff seeks to represent is comprised of and defined as follows:

> **All persons in the United States who, at any time between the four years preceding the filing of this action and the present:**
>
> > **(1)    subscribed to a cellular telephone service;**
> >
> > **(2)    received, at the telephone number assigned to such service, one or more text messages sent by or on behalf of RCCC using the same or substantially the same dialing technology that RCCC used to transmit the subject text messages to Plaintiff; and**
> >
> > **(3)    for whom RCCC lacks any record establishing the person's provision of "express consent" to receive such messages prior to the initiation of such messages.**

39.    Excluded from the class are RCCC, its officers and directors, members of the immediate families of the foregoing, legal representatives, heirs, successors, or assigns of the foregoing, and any entity in which RCCC has a controlling interest.

40.    Plaintiff reserves the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

41.    Plaintiff and all Class members have been impacted and harmed by the acts of RCCC or its affiliates, agents, or subsidiaries acting on its behalf.

42.    This Class Action Complaint seeks injunctive relief and monetary damages.

43.    RCCC or any affiliates, subsidiaries, or agents of RCCC have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

44.    This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

45.    On application by Plaintiff's counsel for class certification, Plaintiff may also seek certification of subclasses in the interests of manageability, justice, or judicial economy.

46.    Numerosity. The membership of the Class is currently unknown to Plaintiff at this time.  The number of persons within the Class is substantial, believed to amount to hundreds or thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class as a named plaintiff.  Further, the size and relatively modest value of the claims of the

individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

47.    <u>Typicality</u>. Plaintiff received at least one text message that originated from RCCC and RCCC lacks any record establishing Plaintiff's prior "express consent" to receive any such messages within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of the members of the Class, and Plaintiff's interests are consistent with and not antagonistic to those of the other Class members he seeks to represent. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, RCCC's TCPA-violative misconduct as alleged herein.

48.    <u>Adequacy</u>. As the proposed Class representative, Plaintiff has no interests adverse to or which conflict with the interests of the absent members of the Class, and he is able to fairly and adequately represent and protect the interests of such a Class.  Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue these claims.  If necessary as the litigation (including discovery) progresses, Plaintiff may seek leave to amend this Class Action Complaint to modify the Class definition set forth above, add additional Class representatives, or assert additional claims.

49. <u>Competency of Class Counsel</u>. Plaintiff has retained and is represented by experienced, qualified, and competent counsel committed to prosecuting this action. Plaintiff's counsel are experienced in handling complex class action claims, including claims arising under various federal and state laws.

50. <u>Commonality and Predominance</u>. There are well-defined common questions of fact and law that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member and may be determined without reference to the individual circumstances of any Class member, include (but are not limited to) the following:

(a) Whether RCCC or affiliates, subsidiaries, or agents of RCCC sent one or more text messages to Plaintiff's and the Class members' cellular telephones;

(b) Whether such text messages were sent using an "automatic telephone dialing system";

(c) Whether RCCC can meet its burden to show that it (or any disclosed affiliate, subsidiary, or agent of RCCC acting on its behalf) obtained prior "express consent" within the meaning of the TCPA to transmit the subject text messages to the recipients of such messages, assuming such an affirmative defense is

timely raised;

(d)     Whether Defendant's conduct was knowing and/or willful; and

(e)     Whether RCCC or any affiliates, subsidiaries, or agents of RCCC should be enjoined from engaging in such conduct in the future.

51.     Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the prosecution of individual litigation on behalf of each Class member is impracticable. Even if every member of the Class could afford to pursue individual litigation, the court system could not; multiple trials of the same factual issues would magnify the delay and expense to all parties and the court system. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA and thus protect individuals' privacy. The interests of Class members in individually controlling the prosecution of separate claims is small because the statutory damages recoverable in an individual action for

violation of the TCPA are likewise relatively small.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the text messages at issue are all automated and because RCCC lacks any record reflecting that it obtained the requisite consent from any Class member to be sent such messages. Class members can be readily located and notified of this class action by reference to RCCC's records and, if necessary, the records of RCCC's affiliates, agents, or subsidiaries and cellular telephone providers.

52.    Additionally, the prosecution of separate actions by individual Class members would create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class members to protect their interests. The prosecution of individual actions by Class members could also establish inconsistent results and/or establish incompatible standards of conduct for RCCC.

**<u>COUNT I</u>**
**VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. § 227, *et seq.***

53.    Plaintiff incorporates by reference the foregoing paragraphs of this Class Action Complaint as if fully stated herein.

54.    Plaintiff and each member of the Class received one or more text

messages sent by or on behalf of RCCC during the class period. Additionally, all such messages were sent via the same dialing technology, which qualified as an ATDS within the meaning of the TCPA, as evidenced by the generic nature of the text messages, the use of a dedicated telephone number to transmit each such message, and the capacities, capabilities, and features of the dialing technology at issue, as alleged above.

55.    Neither Plaintiff nor any other member of the Class provided RCCC with his or her prior "express consent" within the meaning of the TCPA to receive the autodialed text messages at issue in this case.

56.    RCCC's use of an ATDS to transmit the subject text messages to telephone numbers assigned to a cellular telephone service, including to Plaintiff's Cell Number and the numbers of all members of the proposed Class, absent the requisite prior "express consent," as set forth above, constituted violations of the TCPA by RCCC, including but not limited to violations of 47 U.S.C. § 227(b)(1)(A)(iii).

57.    As a result of RCCC's negligent violations of 47 U.S.C. § 227, Plaintiff and all Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

58.    As a result of RCCC's negligent violations of 47 U.S.C. § 227, Plaintiff and all Class members are also entitled to, and do seek, an award of

$500.00 statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

59.    As a result of RCCC's knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff and all Class members are also entitled to, and do seek, an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

60.    Plaintiff, individually and on behalf of the putative Class, seeks an award of attorneys' fees and costs to Plaintiff's counsel pursuant to Federal Rule of Civil Procedure 23 and the common fund doctrine.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and members of the Class, prays for the following relief:

- That this action be certified as a Class Action, establishing the Class and any appropriate sub-classes that the Court may deem appropriate;

- Appointing Plaintiff as the representative of the Class;

- Appointing the law firm representing Plaintiff as Class Counsel;

- An award of $500.00 in statutory damages to Plaintiff and each Class member for each and every negligent violation of 47 U.S.C. § 227(b)(1) by or on behalf of RCCC, pursuant to 47 U.S.C. § 227(b)(3)(B);

- An award of $1,500.00 in statutory damages to Plaintiff and each Class member for each and every knowing and/or willful violation of 47 U.S.C. § 227(b)(1) by or on behalf of RCCC, pursuant to 47 U.S.C. § 227(b)(3)(C);

- An order providing injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A);

- Costs of suit;

- An award of reasonable attorneys' fees and costs to Plaintiff and the Class, pursuant to the common fund doctrine and Federal Rule of Civil Procedure 23

- Pre-judgment and post-judgment interest; and

- Any other further relief that the court may deem just and proper.

## **DEMAND FOR JURY**

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff, individually and on behalf the Class, respectfully demands a trial by jury on all issues so triable.

Respectfully submitted,

WEISBERG CUMMINGS, P.C.

December 28, 2022           /s/ Steve T. Mahan
Date                         Steve T. Mahan (PA 313550)
                             smahan@weisbergcummings.com

21

*/s/ Larry A. Weisberg*
Larry A. Weisberg (PA 83410)
lweisberg@weisbergcummings.com

*/s/ Derrek W. Cummings*
Derrek W. Cummings (PA 83286)
dcummings@weisbergcummings.com

*/s/ Michael J. Bradley*
Michael J. Bradley (PA 329880)
mbradley@weisbergcummings.com

2704 Commerce Drive, Suite B
Harrisburg, PA 17110
(717) 238-5707
(717) 233-8133 (FAX)

*Counsel for Plaintiff*